IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **KENNETH MORRIS**<br>    **Plaintiff,** | * |
| | * |
| v. | Civil Action No. BPG-05-1825 |
| | * |
| **MAYOR & CITY COUNCIL OF**<br>**BALTIMORE,**<br>    **Defendant.** | * |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

<u>OPINION</u>

The above-referenced employment discrimination case was referred to me on August 12, 2005 for all proceedings with consent of the parties pursuant to 28 U.S.C. §636(c).  Plaintiff Kenneth E. Morris, a career firefighter with the Baltimore City Fire Department, seeks injunctive relief, damages, and attorney's fees from defendant Mayor & City Council of Baltimore for failing to promote him from Captain to Battalion Chief.  Plaintiff alleges that defendant deliberately failed to promote him to Battalion Chief because it regarded him as being disabled due to poor health caused by injuries sustained in a work-related accident to his knees, ankles, wrist, and exacerbated by his old age.  Plaintiff argues that defendant's failure to promote him on this basis constitutes a violation of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 <u>et</u> <u>seq.</u>; the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101 <u>et</u> <u>seq.</u>; and the Rehabilitation Act of 1973 (Rehabilitation Act),

29 U.S.C. § 701 et seq.  Currently pending are Defendant's Motion for Summary Judgment, Plaintiff's Response to Defendant's Motion for Summary Judgment, and Defendants' Reply to Plaintiff's Opposition (Paper Nos. 22, 25, 26).  The court held a telephone hearing regarding defendant's motion on June 22, 2006 in which the parties clarified, and elaborated upon, their positions.  For the reasons discussed below, defendants' motion is granted in part and denied in part.

**I.  Background**

Plaintiff joined the Baltimore City Fire Department in 1965 and attained the rank of Captain in 1978.  (Paper No. 25, Exh. 2 at 8-10).  On July 28, 2000, at the age of 57, plaintiff passed a promotional examination rendering him eligible to be promoted to Battalion Chief, the position directly above Captain.  (Id. at 11-14, Paper No. 22-6 at 2, Paper No. 20 at 2).  In accordance with a Memorandum of Understanding (MOU) between defendant and the Baltimore Fire Officers Union, the names of 31 firefighters eligible for promotion to the position of Battalion Chief were placed on a promotional list.  (Paper No. 22-5 at 5).  The list was effective for two years, from October 19, 2000 until October 19, 2002.  (Id., Paper No. 22-2 at 4).  According to the MOU, promotions were to be made from the list in order of rank. (Paper No. 22-5 at 5).  At the time the list became effective, plaintiff ranked twelfth on the list.  (Paper No. 22-6 at 2).

On December 19, 2001 plaintiff sustained injuries to his wrist, ribs, ankles, and knees as the result of a fall that occurred while he was attending to a fire scene. (Paper No. 25, Exh. 2 at 41-42). On April 1, 2002 plaintiff returned to work, but was limited by defendant's medical advisers to administrative duties.[1] (Paper No. 22-2 at 5, Paper No. 22, Exh. G). Over the next several months, plaintiff moved closer to the top of the promotional list, as the Fire Department steadily upgraded Captains to Battalion Chiefs. (Paper No. 25, Exh. 2 at 27-28). Plaintiff alleges that the official in charge of promotions, Chief William J. Goodwin, Jr., indicated in several conversations with other officials in the Fire Department, that he intended to avoid promoting plaintiff due to his health and age, and a concern that plaintiff would simply retire after being promoted; thereby entitling plaintiff to a larger pension without ever having served as a Battalion Chief. (Paper No. 25 at 14, 17, 21-22).

Specifically, Stephen G. Fugate, a Captain in the Fire Department and President of the firefighters' union, testified in

---

[1] Plaintiff was initially limited to "light duty." (Paper No. 22-2 at 5). His status was later changed to "regular duty," however, he was limited to performing administrative functions. (Paper No. 22, Exh. G). During the telephone hearing, plaintiff's counsel explained that plaintiff's status was changed so that plaintiff would not be subjected to mandatory retirement. (Paper No. 22, Exh. A at 81-83, 89-91). The change in status was in name only, it had no effect on plaintiff's duties or functions.

his deposition that Chief Goodwin stated that he would not promote plaintiff to Battalion Chief "[b]ecause of his health." (Id. at 14, Paper No. 25, Exh. 3 at 47-50). Captain Fugate also reported that Chief Goodwin commented that "[plaintiff] in light of his age and his health ... needs to enjoy the rest of his life." (Paper No. 25 at 15, Paper No. 25, Exh. 3 at 62). Captain Fugate further stated in his deposition that Chief Goodwin had, at one point, inquired whether he could skip over plaintiff and promote individuals ranked below plaintiff on the promotional list. (Paper No. 25, Exh. 3 at 47-50). Captain Fugate responded that he could not. (Id.).

The parties do not dispute that in September 2002, Chief Goodwin, who had recently been appointed in February 2002, began to implement his plan to reorganize the command structure of the Fire Department. (Paper No. 25, Exh. 1 at 61). On October 9, 2002, as Chief Goodwin was waiting for approval of his re-organization plan, plaintiff moved to the top of the promotional list, which was set to expire in ten days. (Paper No. 22-2 at 7). On October 19, 2002 the promotional list expired with plaintiff having failed to have attained the rank of Battalion Chief. (Paper No. 25 at 4).

Plaintiff alleges that Chief Goodwin's re-organizational plan had actually been created and put into effect well before it was officially approved. (Id. at 16). In order to fill needed

4

positions in the Department, Chief Goodwin appointed individuals to positions on an "acting" or temporary basis. (<u>Id.</u> at 16-17). This maneuver avoided the creation of vacancies at the Battalion Chief position; positions that could only be filled by resort to the promotional list. (<u>Id.</u>). Plaintiff further alleges that the only reason that Captain Goodwin waited until August 2002 to submit the re-organizational plan that he had already begun to implement several months in advance, was to prevent plaintiff's promotion. (<u>Id.</u> at 19).

Plaintiff filed a Notice of Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) on November 10, 2003. (Paper No. 22-18 at 3). Plaintiff alleged that Chief Goodwin "intentionally went around the promotional list to avoid promoting [plaintiff]" because of plaintiff's "age and [his] medical condition." (<u>Id.</u> at 4). On March 1, 2005 the EEOC issued a Dismissal and Notice of Rights, informing plaintiff that his file was being closed because the EEOC could not conclude that there had been a violation of the employment discrimination statutes. (Paper No. 22-19 at 2). Plaintiff then filed the instant lawsuit.

## II.  **<u>The Summary Judgment Standard</u>**

Summary judgment is appropriate when there is no genuine issue of material fact and a decision may be rendered as a matter of law. Fed. R. Civ. P. 56(c); <u>see also</u> <u>Anderson v. Liberty</u>

5

Lobby, Inc., 477 U.S. 242, 247-48 (1986). The party moving for summary judgment has the burden to demonstrate the absence of any genuine issue of material fact. Fed. R. Civ. P. 56(c); Pulliam Inv. Co. v. Cameo Props., 810 F.2d 1282, 1286 (4th Cir. 1987). If there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. Anderson, 477 U.S. at 250. The only facts that are properly considered "material" are those that might affect the outcome of the case under the governing law. Id. at 248. If the evidence favoring the non-moving party is "merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (internal citations omitted). Thus, the existence of only a "scintilla of evidence," is not enough to defeat a motion for summary judgment. Id. at 252.

To determine whether a genuine issue of material fact exists, all facts and all reasonable inferences drawn therefrom are construed in favor of the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The non-moving party, however, may not rest on its pleadings, but must show that specific, material facts exist to create a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). On those issues for which the non-moving party will have the burden of proof, it is his or her responsibility to oppose the

6

motion for summary judgment with affidavits or other evidence specified in the rule.  Id.; Fed. R. Civ. P. 56(e); Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1316 (4th Cir. 1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial.").  If a party fails to make a showing sufficient to establish the existence of an essential element on which that party will bear the burden of proof at trial, summary judgment is proper.  Celotex, 477 U.S. at 322.

**III.  Discussion**

In his Second Amended Complaint, plaintiff asserts three causes of action against defendant.  (Paper No. 20 at 7-9). Plaintiff alleges that defendant failed to promote him on the basis of his age and disability in violation of the ADEA, ADA, and the Rehabilitation Act.  Defendant argues that it is entitled to summary judgment on plaintiff's claims under the ADEA and ADA because they are time-barred because of plaintiff's failure to file his charge of discrimination with the EEOC within 300 days from the alleged discriminatory event.  (Paper No. 22 at 9-11). Defendant further argues that it is entitled to summary judgment on plaintiff's Rehabilitation Act count, because plaintiff cannot establish a prima facie case of discrimination.  (Id. at 18). Specifically, defendant argues that plaintiff cannot establish

7

that he is "disabled" within the meaning of the statute, or that defendant failed to promote plaintiff under circumstances giving rise to an inference of discrimination.  (Id., Paper No. 26 at 4-6).

### A. Plaintiff's ADA and ADEA Claims

Defendant argues plaintiff's ADA and ADEA claims are time-barred because plaintiff failed to file his charge of discrimination with the EEOC within 300 days of the alleged discriminatory act, in this case, the failure to promote plaintiff to Battalion Chief.  (Paper No. 22-2 at 10).  Plaintiff does not dispute this argument, and recognizes that these causes of action are time-barred.  (Paper No. 25 at 31).

Plaintiff argues, however, that he was subject to several continuing violations of the ADA and ADEA, which would not be time-barred.  (Id.).  Plaintiff argues that he was "restricted in his ability to earn overtime and compensatory time and to earn acting out of title pay."  (Id.).  Defendant responds that plaintiff's charge of discrimination filed with the EEOC did not mention any of these additional claims.  (Paper No. 26 at 2-3).  It is well-established in the Fourth Circuit that in employment discrimination matters in which a lawsuit follows a charge of discrimination filed with the EEOC, "[t]he suit filed may encompass only the discrimination stated in the charge itself or developed in the course of a reasonable investigation of that

8

charge." King v. Seaboard Coast Line Railroad Co., 538 F.2d 581, 583 (4th Cir. 1976) (internal citation and quotations omitted). Not only did plaintiff fail to raise these issues in his EEOC charge, but he failed to raise them in his Complaint. Furthermore, plaintiff has not even attempted to pursue these additional claims in this case. Accordingly, summary judgment is granted in favor of defendant on Counts I and II of plaintiff's Complaint.

### B. **Plaintiff's Rehabilitation Act Claim**

The centerpiece of plaintiff's suit is his "failure to promote" claim[2] brought under the Rehabilitation Act.[3] Plaintiff

---

[2] Plaintiff also asserted in his Complaint (and presumably incorporated in all three Counts) that he was subjected to a hostile work environment. (Paper No. 20 at 5). As discussed above, defendant is granted summary judgment on this claim under Counts I and II, because plaintiff's ADA and ADEA causes of action are time-barred.

Plaintiff does not assert in his opposition that this claim would survive under his Rehabilitation Act count, Count III, and does not attempt to show how the record would allow a jury to find that plaintiff was subjected to a hostile work environment. Therefore, summary judgment is granted to defendant on this claim under Count III as well, due to plaintiff's failure to support this claim with argument or the production of evidence.

[3] Unlike claims brought under the ADA and ADEA which require plaintiffs to provide timely notice of their claims, the Rehabilitation Act does not contain any notice provision. See J.S. ex rel. Duck v. Isle of Wight County School Bd., 402 F.3d 468, 475 (4th Cir. 2005) (noting the distinction).

In addition, unlike the ADA, the Rehabilitation Act only applies to defendant-employers that have been "extended Federal financial assistance." 29 U.S.C. § 794(b). Defendant does not dispute that it receives federal funds.

9

argues that Chief Goodwin deliberately avoided promoting plaintiff because Chief Goodwin perceived plaintiff's physical condition to substantially limit plaintiff's ability to perform the job of firefighter. (Paper No. 25 at 20). Defendant argues that plaintiff cannot establish a prima facie case of discrimination because plaintiff cannot show that he is disabled within the meaning of the Rehabilitation Act and because he cannot show that the circumstances under which defendant failed to promote him give rise to an inference of discrimination. (Paper No. 22 at 17-18, 23).

Under the McDonnell Douglas framework, plaintiff must first establish a prima facie case of discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). In order to establish a prima facie case of discrimination in the denial of a promotion, a plaintiff must show that: (1) he is a member of a protected group; (2) he applied for the position in question; (3) he was qualified for the position; and (4) he was rejected under circumstances giving rise to an inference of discrimination. Evans v. Technologies Applications and Services, 80 F.3d 954, 959-60 (4th Cir. 1994). If a plaintiff can establish a prima facie case of discrimination, it falls to the employer to articulate "some legitimate, nondiscriminatory reason" for its conduct. McDonnell Douglas Corp., 411 U.S. at 802. If the defendant is able to articulate such a reason, the ultimate

burden shifts to the plaintiff to show that the defendant's stated reason is "pretextual" or false.  Id. at 804.

### 1. **Member of a Protected Group**

Defendant argues that plaintiff cannot establish the first prong of his prima facie case, that he is the member of a "protected group."  A plaintiff who claims protection under the Rehabilitation Act must demonstrate that he is an "otherwise qualified individual with a disability."  29 U.S.C. § 794(a); Forrisi v. Bowen, 794 F.2d 931, 933 (4th Cir. 1986).  As the Fourth Circuit has explained, an individual with a disability is "'any person who ... has a physical or mental impairment which substantially limits one or more of such person's major life activities.'"  Gupton v. Virginia, 14 F.3d 203, 205 (4th Cir. 1994); 29 U.S.C. § 705(9)(B).  The phrase "major life activities" is further defined as "functions ... such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  29 U.S.C. § 705(20)(B), 29 C.F.R. §§ 1630.2(i).[4]  An individual is also deemed to be "disabled" if he has a record of having a substantial impairment or is "regarded as" having such an

---

[4] Although the EEOC promulgated these regulations to implement the ADA, the Fourth Circuit has recognized that "[t]he standards used to determine whether an employer has discriminated under the Rehabilitation Act are the standards applied under [the] ADA."  Hooven-Lewis v. Caldera, 249 F.3d 259, 268 (4th Cir. 2001) (citing 29 U.S.C. § 791(g)); 29 U.S.C. § 794(d).

11

impairment.  29 C.F.R. § 1630.2(g).

### a. "Regarded As" Being Substantially Impaired

Plaintiff argues that he is disabled because he is "regarded as" being substantially limited in the major life activity of working by his employer, defendant.[5]  (Paper No. 25 at 28). Plaintiff alleges that defendant perceived his variety of ailments, including having suffered from a broken right wrist, bruised knees, ankle sprains, combined with his age as substantially limiting his ability to work as a firefighter. (Paper No. 25 at 27).  Based on plaintiff's overall physical condition, particularly the condition of his knees, plaintiff was restricted by the Department's medical advisers from engaging in "front-line" or, fire suppression, duties.  (See Paper No. 22-2 at 19).  More specifically, plaintiff was restricted to "primarily seated duties, minimized stair climbing, and no lifting over five pounds with the right hand."  (Paper No. 25, Exh. 6 at 6).  Although plaintiff was permitted to return to work, Chief Goodwin, through contact he had with the Fire Department's medical advisers, ensured that he was restricted to administrative duties.  (Paper No. 25, Exh. 1 at 30-32).

As explained during oral argument on this motion, defendant

---

[5] Plaintiff appeared to argue in his opposition memorandum that he was both "regarded as" being disabled and disabled in fact.  (Paper No. 25 at 26-27).  Plaintiff clarified during the telephone hearing on defendant's motion that he is only relying on the "regarded as" theory to establish his disability status.

argues that Chief Goodwin's decision to restrict plaintiff to administrative duties was based solely on the recommendation of the Department's medical advisers and the description of plaintiff's condition in the accompanying medical reports which indicated that plaintiff's knee injuries were temporary and not very serious.  Defendant further argues that because Chief Goodwin's perception of plaintiff's condition derived solely from these reports, Chief Goodwin could only have perceived plaintiff's condition as it was described in those reports, i.e., as being temporary and not serious.

First, the record belies defendant's assertion that Chief Goodwin's knowledge of plaintiff's condition was derived from the medical reports.  Chief Goodwin stated in his deposition that he is "not privy to [plaintiff's] medical history information." (Paper No. 25, Exh. 1 at 12).  Second, plaintiff has produced direct evidence that Chief Goodwin treated plaintiff's condition as substantially limiting plaintiff's ability to perform his job.  Chief Goodwin is reported to have stated that he would not promote plaintiff to Battalion Chief "[b]ecause of his health," (Paper No. 25, Exh. 3 at 47-50), and that "[plaintiff] in light of his age and his health ... needs to enjoy the rest of his life," (Id. at 62).  This evidence, at a minimum, clearly creates a genuine issue of material fact as to whether defendant regarded plaintiff as substantially impaired.  See Cline v. Wal-Mart

13

Stores, Inc., 144 F.3d 294, 303 (4th Cir. 1998) (holding that a statement by a plaintiff's employer that the plaintiff was "demoted because of his health," constituted direct evidence that the employer perceived plaintiff to be disabled).

Accordingly, there is a genuine dispute of fact as to whether defendant perceived plaintiff to be substantially limited in his ability to perform the job of firefighter.

### b.   "Class of Jobs" or "Broad Range of Jobs"

Defendant further argues that even if defendant is found to have perceived plaintiff as unable to perform the specialized job of firefighter, plaintiff cannot show that defendant regarded plaintiff's ability to work in general as substantially limited. (Paper No. 22 at 21-23).  A plaintiff's ability to work is substantially limited if he is unable to "perform either a class of jobs or a broad range of jobs in various classes."  29 C.F.R. § 1630.2(j)(3)(i).  Defendant cites several cases that hold that the inability to perform the job of firefighter does not preclude one from performing a "class of jobs" or a "broad range of jobs." See, e.g., Bridges v. City of Bossier, 92 F.3d 329 (5th Cir. 1996) ("[A] limitation that prevents one from becoming a firefighter - or even a firefighter and associated municipal paramedic or EMT backup firefighter - [] only affects a 'narrow range of jobs.'").

None of the cases cited by defendant are controlling,

14

however, and none engage in the type of "individualized inquiry" required in the Fourth Circuit under <u>Forrisi v. Bowen</u>. In making this individualized inquiry, a court must determine "whether the particular impairment constitutes for the particular person a significant barrier to employment." <u>Forrisi</u>, 794 F.2d at 933. Relevant to this inquiry are: "[1] the number and type of jobs from which the impaired individual is disqualified, [2] the geographical area to which the individual has reasonable access, and [3] the individual's job expectations and training." <u>Id.</u> (quoting <u>Jasany v. United States Postal Service</u>, 755 F.2d 1244, 1249 (6th Cir. 1985)); <u>see also</u> 29 C.F.R. § 1630.2(j)(3)(ii) (codifying the <u>Forrisi</u> factors).

 Here, plaintiff has served in the Baltimore City Fire Department for over 30 years. Plaintiff's job expectations and training solely revolve around his career with this specific fire department. Were plaintiff to have to seek a different job at this stage in his career, he would be forced to "alter his career path and/or to once again start at the bottom of the ladder." <u>Huber v. Howard County, Maryland</u>, 849 F. Supp. 407, 412 (D. Md. 1994) (holding that a volunteer firefighter whose asthma prevented him from advancing his career as a firefighter was disabled under the Rehabilitation Act). Further, plaintiff has produced sufficient evidence showing that he was restricted from positions involving both fire investigation – as well as fire

15

suppression – duties.[6]  Accordingly, plaintiff has produced sufficient evidence to create a factual dispute as to whether defendant perceived him to be precluded from "one narrow job classification," Forrisi, 794 F.2d at 934, or whether defendant perceived him to be precluded from performing a class of jobs.

In sum, plaintiff has created a factual issue as to whether plaintiff is disabled within the meaning of the Rehabilitation Act.

### 2.  **The Circumstances of the Failure to Promote**

Defendant also argues that plaintiff cannot establish the fourth prong of his prima facie case, that defendant failed to promote plaintiff under circumstances giving rise to an inference of discrimination.  Defendant asserts that at the time that plaintiff was at the top of the promotional list, there were no open Battalion Chief positions.  The Supreme Court has instructed that "the McDonnell Douglas formula does not require direct proof of discrimination," but rather, it merely requires the plaintiff to show that "his rejection did not result from the two most common legitimate reasons on which an employer might rely to reject a job applicant: an absolute or relative lack of qualifications or the absence of a vacancy in the job sought."

---

[6] In this regard, the record is unclear as to what specific duties a Battalion Chief is required to perform.  Accordingly, the court cannot determine with any certainty what job functions defendant thought plaintiff could or could not engage in.

16

International Broth. of Teamsters v. U.S., 431 U.S. 324, 358 n.44 (1977).  "Elimination of these reasons for the refusal to hire is sufficient, absent other explanation, to create an inference that the decision was a discriminatory one."  Id.

    Here, plaintiff has adduced direct evidence of discriminatory intent, that is, the deposition testimony of Captain Fugate who reported that Chief Goodwin said that plaintiff was not promoted because of his health.  Furthermore, even if the court were to ignore such incriminating statements, the record sufficiently raises a factual question as to whether the reason that no Battalion Chief positions were available at the relevant time period was because of Chief Goodwin's manipulation of the Fire Department's command structure.  There is evidence in the record to show that Chief Goodwin delayed submitting his re-organizational plan for approval and that he filled other positions with "acting" employees, so as to avoid the creation of vacancies at the Battalion Chief level.  Specifically, Chief Goodwin testified at his deposition that he implemented his re-organization plan as early as June, but did not submit the plan for approval until August.  (Paper No. 25, Exh. 1 at 61, 71-73).  Captain Fugate testified in his deposition that there was no reason that Chief Goodwin had to use "acting" officers to fill needed positions during the time that plaintiff was nearing the top of the promotional list.  (Paper No. 25, Exh.

17

3 at 77-78). Accordingly, there is more than sufficient evidence, both direct and indirect, to create a factual issue regarding the fourth prong of plaintiff's prima facie case that the circumstances surrounding defendant's conduct give rise to an inference of discrimination.[7]

## IV.  Conclusion

For the foregoing reasons, Defendants' Motion for Judgment (Paper No. 24) is GRANTED in part, and DENIED in part. A separate order shall issue.


Date: 07/06/06                                  _____/s/_____
                                                Beth P. Gesner
                                                United States Magistrate Judge

---

[7] Defendant merely attacks plaintiff's ability to establish a prima facie case, and does not attempt to articulate "some legitimate, non-discriminatory" reason for its conduct. Thus, plaintiff has carried his burden to withstand summary judgment under the McDonnell Douglas framework.